UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Machele A. Gregory,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Civil Action No. 12-13022

HON. STEPHEN J. MURPHY, III
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Machele A. Gregory brings this action under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On July 16, 2009, Plaintiff filed applications for DIB and SSI, alleging an onset date of October 31, 2006 (Tr. 161-170). After the initial denial of her claim, Plaintiff filed a request for an administrative hearing, held on February 11, 2011 in Livonia, Michigan before Administrative Law Judge ("ALJ") Anthony R. Smereka (Tr. 28). Plaintiff, represented by attorney Kimberly Suzor, testified (Tr. 32-70), as did Vocational Expert ("VE") Richard Szydlowski (Tr. 70-76). February 16, 2011, ALJ Smereka found Plaintiff not disabled (Tr.

-1-

23). On May 16, 2012, the Appeals Council denied review (Tr. 1-6). On July 10, 2013, Plaintiff filed for judicial review of the Commissioner's final decision in this Court.

## BACKGROUND FACTS

Plaintiff, born March 23, 1955, was age 56 when the ALJ issued his decision (Tr. 23, 161). She completed high school (Tr. 201) and worked previously as a machine operator and supervisor (Tr. 195). She alleges disability as a result of "lupus, hypertension, ruptured discs, memory problems, stroke residuals, skin blisters, [and] sleep apnea" (Tr. 194).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She left school in 11th grade after being assaulted (Tr. 32). The application for benefits stating that she had completed 12th grade was incorrect (Tr. 33). As a result of a stroke sustained in the 1980s, she experienced memory problems (Tr. 33). She did not work after October, 2006, but received unemployment benefits until March, 2010 and currently received food stamps (Tr. 33-35).

*Plaintiff's counsel amended her client's alleged onset of disability date to September 12, 2007* (Tr. 37).

Plaintiff reported that she experienced discoid lupus (a disease of the skin causing lesions) and arthritis (Tr. 38). She experienced coldness and pain of the shoulders, knees, and feet (Tr. 41). She had been diagnosed with sleep apnea, but health insurance limitations prevented her from obtaining a CPAP machine (Tr. 43). She also experienced polyps of the nasal cavity (Tr. 43). She reported that she was depressed but had not received mental health treatment (Tr. 44). Her current treating physician prescribed Xanax (Tr. 44).

Plaintiff currently lived with her brother, daughter, grandchild, and nephew in Inkster, Michigan (Tr. 45). Her depression was brought on by self-consciousness about her skin

condition (Tr. 46). She experienced pain walking even short distances (Tr. 47). Her hands cramped up when she attempted to cook, with the worse pain on the left (Tr. 46).

In her most recent job, Plaintiff worked as a machine operator (Tr. 49). While working, hand problems caused her to drop "car parts" on a regular basis (Tr. 49). She estimated that the job required her to lift up to five pounds (Tr. 50). Her former work as a hand packer required her to supervise 16 employees and complete inventory sheets (Tr. 50-51). She stopped working in October, 2006 because the plant closed (Tr. 52). Her physical problems increased as she aged (Tr. 53). She experienced chronic chest pain (Tr. 54).

In response to questioning by her attorney, Plaintiff reported that she experienced joint swelling, muscle spasms, foot cramping, and sleep disturbances (Tr. 55-56). Depression created three to four "bad" days a week during which time she stayed in bed the entire day (Tr. 56-57). She was unable to carry a purse, walk for even half a block, or perform any pushing or pulling (Tr. 57). On a scale of one to ten, pain as a result of lupus created "over a ten"discomfort (Tr. 59). Plaintiff's work as a supervisor, lasting between 1992 and May, 2000, required her to stand the majority of the workday (Tr. 62).

### B.   Medical Evidence

#### 1.   Treating Sources[1]

A May, 2002 CT scan of the head was negative for abnormalities (Tr. 259). In January, 2004, Plaintiff was prescribed antibiotics for an earache (Tr. 252). In September, 2007, Plaintiff sought treatment for sinus congestion (Tr. 261). A physical examination was

---

[1]Evidence created before the alleged disability onset date of October 31, 2006 have been included for background purposes only.

unremarkable (Tr. 261-262). Transcribed notes of Roger J. Lewis, M.D.'s examination state that because Plaintiff experienced lupus, the use of an oral decongestant was not advised (Tr. 262). He prescribed Amoxicillin (Tr. 262). In January, 2008, Plaintiff sought emergency treatment for abdominal pain (Tr. 272). Imaging studies showed the presence of a small renal cyst (Tr. 274, 289). She was discharged in stable condition the same day (Tr. 273).

June, 2009 examination notes by Sarah Jacob, M.D. state that Plaintiff experienced lupus (Tr. 346). November, 2009 imaging studies of the right hip and left knee were unremarkable (Tr. 336). Joel Shavell, D.O. noted that a rheumatological examination was unremarkable (Tr. 332). Plaintiff demonstrated essentially normal ranges of motion and the absence of joint swelling (Tr. 332). Dr. Shavell found the presence of "discoid lupus; [and] joint pain either due to lupus or other issues" (Tr. 332). Examination notes created later the same month by F. Nasser, M.D. state that Plaintiff had lupus (Tr. 328). In December, 2009, Dr. Shavell noted a diagnosis of discoid lupus (Tr. 327). The following month, Dr. Shavell again noted a diagnosis of discoid lupus, stating that while "there may be some systemic involvement . . . it certainly has not materialized other than the discoid . . . ." (Tr. 320). May, 2010 notes by Dr. Jacob state that Plaintiff experienced knee pain and hand swelling (Tr. 360). November, 2010 treating notes by Dr. Jacob state that Plaintiff experienced left side pain (Tr. (Tr. 342). December, 2010 treating notes by Dr. Jacob state that Plaintiff experienced systemic lupus erythematosus ("SLE")[2] (Tr. 358).

---

[2] SLE "is a chronic autoimmune disease that can affect almost any organ system; thus, its presentation and course are highly variable, ranging from indolent to fulminant." http://emedicine.medscape.com/article/332244-overview (last visited August 7, 2013).

## 2. Non-Treating Sources

In October, 2009, psychiatrist Basivi Baddigam, M.D. performed a consultative mental evaluation of Plaintiff on behalf of the SSA (Tr. 297-299). Plaintiff reported depression following the death of her mother and brother, noting that she cried often but had not attempted suicide (Tr. 297). She reported getting along well with others (Tr. 297). She stated that she was currently receiving treatment for "hypertension, body pains [and] lupus" from Dr. Jacobs and currently took Plaquenil, Procardia, and Motrin (Tr. 297). She denied legal problems (Tr. 297). Plaintiff exhibited a normal affect with low self esteem (Tr. 298). She reported memory problems (Tr. 298). Dr. Baddigam assigned her a GAF of 50 with a "guarded" prognosis[3] (Tr. 299).

The following month, Dennis Beshara, M.D. performed a Psychiatric Review Technique, finding the presence of an affective disorder (depression) (Tr. 304, 307). He found that Plaintiff experienced moderate deficiencies in concentration, persistence, and pace (Tr. 314). Dr. Beshara cited Dr. Baddigam's observation that Plaintiff was fully oriented, cooperative, and was able to attend church and drive (Tr. 316). Dr. Beshara also completed a non-examining Mental Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff experienced moderate limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention for extended periods; perform activities within a schedule; and respond appropriately to workplace changes (Tr. 300-301). Dr. Beshara found Plaintiff nonetheless capable of performing unskilled work (Tr. 302, 316).

In January, 2010, internist S. Obri, M.D. examined Plaintiff on behalf of the SSA (Tr. 290-296). Plaintiff reported a history of lupus hypertension, sleep apnea, depression, and

---

[3]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV-TR*" ), 34 (4th ed.2000).

back pain, noting that she had not been diagnosed with sleep apnea (Tr. 290). She exhibited a facial rash and hair loss (Tr. 290). An examination was negative for breathing problems and edema of the extremities (Tr. 291). Plaintiff appeared fully oriented with a stable gait (Tr. 291). She reported that she worked as a housekeeper (Tr. 291). Dr. Obri noted a "probably severe" diagnosis of systemic lupus erythematosus, hypertension, depression, degenerative arthritis, and "possible inflammatory arthritis related to lupus" (Tr. 292). He found that Plaintiff did not need a cane and could perform a wide range of manipulative and postural functions (Tr. 293-294).

### C. Vocational Expert Testimony

VE Richard Szydlowski classified Plaintiff's previous work (as performed) as a machine operator as unskilled at the light exertional level and work as a hand packer as skilled/light[4] (Tr. 71). The VE found that Plaintiff possessed skills transferrable to other exertionally light positions (Tr. 72). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, educational level (11th grade), and work experience:

> If we were to assume a restriction to a light level of work . . . . it also assumes the ability to stand or walk at least six out of eight hours and sit for the same amount of time. Please also assume a restriction of no climbing of any ladders, ropes, or scaffolds. If we were to make those assumptions, could such an individual return to either of the past [jobs]? (Tr. 74).

The VE testified that the individual could perform either of Plaintiff's past jobs (Tr. 74).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE testified further that if the same individual were limited to sedentary work, she would be unable to perform any past relevant work but could work as a document preparer and collator and stuffer (4,000 positions in the regional economy); inspector, checker, sorter, (2,000); assembler (2,000); and surveillance monitor (2,000) (Tr. 75). The VE added that all of the jobs cited required frequent handling and fingering except for the surveillance job, which required only occasional gross and fine manipulation (Tr. 76). The VE stated that if the same individual were absent more than twice a month, all competitive work would be eliminated (Tr. 76).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Smereka determined that Plaintiff experienced the severe impairments of discoid lupus and depression, but that neither condition met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-15). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with a restriction "from working with the general public" (Tr. 17). He found that the RFC did not prevent Plaintiff from performing her past relevant work as a packaging supervisor and machine operator "as actually performed" (Tr. 21-22).

The ALJ discounted Plaintiff's allegations of disability, observing that she "appeared to be extremely guarded in her testimony" (Tr. 20). He noted that Plaintiff's claims that she was socially isolated stood at odds with her ability to get along with her extended family and attend church (Tr. 20). The ALJ noted that alleged limitations as a result of a stroke occurring in the 1980s did not prevent Plaintiff from later working as a packaging supervisor (Tr. 20).

### **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

-8-

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS
### A. Substantial Evidence Supports the ALJ's Decision

In this section, Plaintiff presents several undeveloped arguments in favor of remand. She faults the ALJ of "cherry-picking" the record for evidence supporting the Step Four finding but ignoring evidence supporting the disability claim. *Plaintiff's Brief* at 10-14, *Docket #11*. She accuses the ALJ of ignoring "all the medical opinions of trained treating physicians without any rational basis," and that he discounted Dr. Jacob's "opinion . . . without any rationale." *Id.* at 12. Finally, she argues that the ALJ failed to perform a function-by-function analysis of Plaintiff's work related abilities as required by SSR 96-8. *Id.* at 13.

The ALJ's reasons for rejecting the disability claim did not constitute a distortion of the record. The ALJ accurately summarized Plaintiff's testimony, noting her allegations of joint pain, cramps, sleep disturbances, and depression (Tr. 18). Plaintiff faults the ALJ's citation to Dr. Obri's observation that she was depressed, noting that Dr. Obri was an internist, not a psychiatrist. *Plaintiff's Brief* at 12. It is unclear why Plaintiff disputes this observation, particularly since it is directly followed by the ALJ's acknowledgment that the consultative psychiatrist also found the presence of depression (Tr. 19-20).

Plaintiff's argument that the ALJ erred by rejecting Dr. Jacob's "opinion" is also unavailing. While the ALJ stated that he gave no weight to Dr. Jacob's opinion, he was not

rejecting a disability opinion or an assessment of Plaintiff's work related abilities (Tr. 21). Rather, he rejected Dr. Jacob's apparent finding that Plaintiff experienced systemic lupus erythematosus ("SLE") (Tr. 21, 343). Even assuming that Dr. Jacob's diagnosis was entitled to the deference accorded a treating source "opinion," as required by 20 C.F.R § 404.1527(c), the ALJ provided "good reasons" for rejecting Dr. Jacob's diagnosis, noting that it was contradicted by rheumatologist Dr. Shavell's finding that Plaintiff experienced only discoid lupus (Tr. 21, 320).

In addition, Plaintiff's related argument that the ALJ ought to have recontacted Dr. Jacob for clarification of her diagnosis represents a misreading of the applicable regulation. "[A]n Administrative Law Judge need recontact a medical source only if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Commissioner of Social Sec.,* 2006 WL 3690637, *5 (6th Cir. December 15, 2006)(citing 20 C.F.R. § 404.1512). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.,* 2008 WL 828861, *4 (W.D.Mich. March 26, 2008) (*citing Johnson v. Barnhart,* 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005); SSR 96-5p). The ALJ's finding that rheumatologist Dr. Shavell's opinion was entitled to more weight than that of the general practitioner does not amount to a "gap" in the records (Tr. 40). Finally, Plaintiff's argument that the ALJ did not consider whether she could perform full-time work is flatly contradicted by the VE's testimony, made in response to a detailed hypothetical question, that Plaintiff was capable of returning to her former, full-time jobs as a machine operator and supervisor (Tr. 71-73).

### B. The RFC

Plaintiff seems to argue here that the RFC did not include all of her relevant

limitations created by the Step Two "severe" impairments of discoid lupus and depression *Plaintiff's Brief* at 14-16 (citing Tr. 14, 17).

First, as articulated by the ALJ, substantial evidence supports the finding that Plaintiff could perform a full range of exertionally light work. The ALJ noted that while Plaintiff reported hip and back pain to treating sources, the limited imaging studies showed no abnormalities (Tr. 20). Although Plaintiff alleged that she had experienced limitations as a result of discoid lupus for the past 20 years, the ALJ noted that she continued to work until late 2006 (Tr. 22). Likewise, while she stated that her work abilities were limited by depression as a result of her appearance (Tr. 46), the ALJ pointed out that she had been able to work in a supervisory position well after being disfigured by the skin condition (Tr. 16).

Plaintiff also criticizes the ALJ for finding only mild deficiencies in concentration, persistence, or pace ("CPP"). *Plaintiff's Brief* at 14-15. To be sure, the ALJ's finding that Plaintiff experienced only mild deficiencies in CPP deviates from Dr. Beshara's finding of *moderate* limitations in the same category (Tr. 17, 314). However, the ALJ supported his finding by noting that Plaintiff did not seek "mental health treatment" other than taking psychotropic medication prescribed by her medical sources (Tr. 17). He also cited Plaintiff's acknowledgment that her alleged memory problems were attributable to a mild stroke occurring in the 1980s rather than depression (Tr. 17, 42). Even assuming that the stroke created some degree of limitation, it did not prevent her from working until late 2006 when her job was terminated due to a plant closure (Tr. 52). Notably, while the ALJ found a lesser degree of limitation in CPP than Dr. Beshara, he found that Plaintiff experienced a *greater* degree of social limitation than found by the non-examining source (Tr. 16, 314).

Plaintiff also faults the ALJ for failing to adopt Dr. Baddigam's finding of work-preclusive memory problems. However, the ALJ permissibly rejected that finding on the

basis that it was not supported by the treating records, correctly noting that the treating records did not indicate significant memory problems (Tr. 21). Despite the alleged memory problems, Plaintiff was able to provide detailed testimony as to the number of workers she supervised between 1992 and 2000, along with the specific postural and exertional requirements of the job (Tr. 51, 62-64). Because the RFC was well supported and explained, remand on this basis is not warranted.

### C. The Credibility Determination

Plaintiff argues in conclusion that the ALJ's credibility determination was "fundamentally flawed." *Plaintiff's Brief* at 16-17.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. Plaintiff does not dispute the ALJ's finding that depression and discoid lupus were "severe" impairments. Instead, he appears to argue that the ALJ did not address the second prong of SSR 96-7p which directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[5]

---

[5] In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:
 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to

I find no basis for Plaintiff's claim that the ALJ did not consider the entire record in making the credibility determination. He acknowledged her testimony that she was socially isolated and was unable to drive, shop, or perform household chores (Tr. 18). However, in support of his determination, the ALJ noted that Plaintiff was able to get along well with her extended family, attend church occasionally, drive when necessary, and handle her own finances (Tr. 20). He found that Plaintiff's alleged memory problems as a result of a stroke had not prevented her from working until 2006 (Tr. 20).

In support of the credibility determination, it bears repeating that the disability onset date coincided with the date that her plant closed rather than a medically documented health event (Tr. 52). Notably, although Plaintiff received regular medical treatment, none of her treated sources opined that she was disabled. Plaintiff faults the ALJ's observation that her testimony was less than candid. However, "an ALJ is charged with the duty of observing a witness's demeanor and credibility" and the "findings based on the credibility of the applicant are to be accorded great weight." *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'"). Because the ALJ's reasons for rejecting Plaintiff's claims are well supported and well developed, the deference generally allotted to the credibility determination is appropriate here.

In closing, I note that the recommendation to uphold the administrative decision should not be read to trivialize Plaintiff's physical problems and depression. However, the

---

relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

ALJ's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing and as such, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

12-13022 GREGORY v. SOCIAL SECURITY COMMISSION

Dated: August 15, 2013    s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 15, 2013, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable R. Steven Whalen